UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN COOPER, | ) |
| Plaintiff, | ) |
| | ) No. 24-cv-2873 |
| v. | ) |
| | ) Judge April M. Perry |
| VILLAGE OF CAROL STREAM, | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Brian Cooper ("Plaintiff") brings this action against the Village of Carol Stream ("Defendant"), alleging violations of the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). Specifically, Plaintiff alleges age discrimination in violation of the ADEA (Count I), retaliation in violation of Title VII (Count II), and constructive discharge in violation of Title VII (Count III). For the following reasons, Defendant's motion for summary judgment is granted as to Counts I and III and denied as to Count II.

**LEGAL STANDARD**

Summary judgment is proper when the movant shows that there is no genuine dispute of material fact such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Although the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, the party that bears the burden of proof must present facts showing there is a

1


genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986); *LaRiviere v. Bd. of Trs.*, 926 F.3d 356, 359 (7th Cir. 2019). To avoid summary judgment, the nonmovant must show more than metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). While the court must construe the facts in the light most favorable to the nonmovant and draw all reasonable inferences in his favor, this obligation does not extend to drawing inferences that are supported by only speculation or conjecture. *See Swetlik v. Crawford*, 738 F.3d 818, 829 (7th Cir. 2013).

## BACKGROUND

Plaintiff, who was born in 1973, was employed by Defendant at the Village of Carol Stream Police Department. Doc. 39 ¶ 1; Doc. 27-4 at 1. Plaintiff worked for Defendant as a police officer from January 4, 1999 until January 31, 2024. Doc. 39 ¶ 1.

In 2021, Plaintiff was a Commander with the police department and sought a promotion to become Deputy Chief. *Id*. ¶ 11. On February 11, Police Chief William Holmer informed Plaintiff that another individual had been selected; Plaintiff asked Chief Holmer whether the decision was age-related as the selected candidate was nine years younger than Plaintiff. *Id*. ¶¶ 13, 21, 23. Plaintiff asserts that he also accused Chief Holmer of age discrimination in the promotion process. Doc. 43 ¶ 22; at Doc. 41-5 at 45. Plaintiff testified that following this conversation, Chief Holmer began engaging in hostile and retaliatory acts against Plaintiff like demonstrating an "arm bar" control tactic using Plaintiff, yelling at Plaintiff in a meeting, periodically informing Plaintiff when free food was available and making other comments Plaintiff perceived to be about his finances, limiting Plaintiff's purchasing authority, and assigning projects to Plaintiff's supervisees without Plaintiff's knowledge. Doc. 39 ¶¶ 25-29.

2

In September 2022, Chief Holmer ordered an internal investigation of Plaintiff following Plaintiff's installation of additional lighting on Plaintiff's squad car. *Id.* ¶¶ 38-40. Chief Holmer ultimately recommended Plaintiff's demotion from Commander to Sergeant, asserting that Chief Holmer had lost trust in Plaintiff. *Id.* ¶¶ 41-44; Doc. 27-22. The Village Manager adopted Chief Holmer's recommendation, and Plaintiff was demoted effective February 6, 2023. Doc. 39 ¶¶ 47, 50.

In March 2023, Plaintiff began a period of medical leave due to work-related injuries. *Id.* ¶ 52. He worked only ten shifts as a Sergeant before his resignation in January 2024. *Id.* ¶¶ 52, 55.

Plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 14, 2023, and August 16, 2024. Doc. 27-4; Doc. 27-5.

## ANALYSIS

### I. Age Discrimination (Count I)

The Court begins with Plaintiff's ADEA claim, which Defendant asserts is untimely. Plaintiff's claim of age discrimination is predicated on Defendant's failure to promote him to Deputy Chief in February 2021. *See* Doc. 15 ¶¶ 29-39. Defendant asserts that this claim is time barred because Plaintiff failed to file his EEOC Charge within 300 days of the alleged discriminatory act.

Before filing suit under the ADEA, a plaintiff must first file a charge with the EEOC. 29 U.S.C. § 626(d)(1). This charge must be filed within 300 days of the alleged unlawful employment practice. *See Flannery v. Recording Industry Ass'n of America*, 354 F.3d 632, 637 (7th Cir. 2004) ("In Illinois, an employee may sue under the ADEA ... only if he files a charge of discrimination with the EEOC within 300 days of the alleged 'unlawful employment practice'").

This deadline is a condition precedent to filing suit, similar to the statute of limitations. *Perkins v. Silverstein*, 939 F.2d 463, 470 (7th Cir. 1991). As such, it is an affirmative defense on which the defendant bears the burden of proof.

Here, it is undisputed that on February 11, 2021, Chief Holmer met with Plaintiff and advised him that someone else had been selected to fill the Deputy Chief position. Doc. 39 ¶ 21. At that meeting, Plaintiff claims that he told Chief Holmer that he believed he was being passed over for promotion due to his age and that this was discrimination. Doc. 41-5 at 38, 45. However, Plaintiff did not file his charge of age discrimination with the EEOC until September 14, 2023, more than 900 days later. Doc. 39 ¶ 6; Doc. 27-4. This is untimely by more than 600 days. *See Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir.2001) ("The 300–day limit…begins to run when the defendant has taken action that injures the plaintiff and when the plaintiff knows [he] has been injured, not when [he] determines that the injury was unlawful").

Plaintiff responds that Defendant's "argument is flawed both legally and factually," Doc. 38 at 12, but does not cite any facts or law that would explain how a claim predicated on the failure to promote him in February 2021 is timely. Plaintiff then pivots to the argument that, even if it is not actionable, the failure to promote in 2021 would still be "admissible to show context, motive, and discriminatory animus." *Id.* at 12. This may be true, *see National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), but it is not enough to save Plaintiff from summary judgment on Count I, which is predicated only upon the 2021 failure to promote.

Plaintiff also argues that other, more recent, acts could constitute age discrimination in violation of the ADEA. Specifically, Plaintiff points to his demotion from Commander to Sergeant in February 2023, and the fact that Plaintiff was not promoted to Deputy Chief in October 2023. Both of these events are mentioned in the amended complaint, although neither is

4

referenced as forming a basis for Count I. And responsive briefs are not the proper place to try to amend a pleading. *Pirelli Armstrong Tire Corp. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (noting "the axiomatic rule that a plaintiff may not amend his complaint in his response brief."). But even if Plaintiff had pled these events as predicates for Count I, summary judgment still would be appropriate because Plaintiff does not cite any facts to support his contentions.

First, with respect to the claim that Plaintiff should have been promoted to Deputy Chief in October 2023, Plaintiff does not cite any facts to show that he applied for this position. Plaintiff cites facts in support of the contention that the officer promoted was younger than Plaintiff and less qualified than Plaintiff, but nowhere does Plaintiff cite to evidence that Plaintiff was himself a candidate. *See* Doc. 43 ¶ 18. To the contrary, it appears that Plaintiff withdrew his application for this position because he was on too many medications to be able to submit the application in a timely manner or to sit for an interview. Doc. 41-5 at 75-77. Plaintiff can hardly demonstrate a genuine dispute of fact as to whether he was denied a promotion due to his age when he voluntarily withdrew his application.

Second, with respect to Plaintiff's argument that his February 2023 demotion could form the basis of an ADEA claim, this may theoretically be true. But Plaintiff has never pled, argued, or provided any facts in support of such a claim. To the contrary, Plaintiff's demotion has been consistently pled and argued by him as retaliatory, not based upon his age. *See, e.g.,* Doc. 38 at 5 (plaintiff's "complaints of age discrimination set off a campaign of retaliation that ultimately culminated in his demotion."); 9 (plaintiff's "protected complaints about age discrimination triggered a pattern of retaliatory acts that culminated in his demotion"); 11 (referring to his "retaliatory demotion"). Without any cited facts in support of a claim of age discrimination,

5

Plaintiff has therefore not shown a genuine dispute of fact as to whether his demotion was based upon his age.

For all of these reasons, Defendant is entitled to summary judgment on Count I.

**II.     Retaliation (Count II)**

The Court next addresses Plaintiff's retaliation claim under Title VII. "Title VII prohibits employers from retaliating against employees for complaining about discrimination." *Mollet v. City of Greenfield*, 926 F.3d 894, 896 (7th Cir. 2019), citing 42 U.S.C. § 2000e-3(a). To survive summary judgment on his Title VII retaliation claim, a plaintiff must show that (1) he engaged in statutorily protected activity; (2) his employer took materially adverse employment action against him; and (3) a causal link exists between the two. *Id.* To show a causal link in a Title VII retaliation case, a plaintiff must show but-for causation. *Univ. of Texas Sw. Med. Ctr. V. Nassar*, 570 U.S. 338, 362 (2013). That is, there must be evidence that "the adverse action would not have happened" had the plaintiff not engaged in protected activity. *Adebiyi v. S. Suburban College*, 98 F.4th 886, 892 (7th Cir. 2024). Causation evidence may be direct or circumstantial, with circumstantial evidence including things like "suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual." *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019). All evidence, whether direct or circumstantial, is considered together, not separately. *Ortiz v. Werner Enters.*, 834 F.3d 760, 766 (7th Cir. 2016).

In this case, there is evidence that Plaintiff engaged in statutorily protected activity when he told Chief Holmer in February 2021 that he believed he had been denied a promotion due to his age and that this was discriminatory. There is further evidence that an adverse action was taken against Plaintiff when in February 2023 Plaintiff was demoted. Still, Defendant contends that

6

this nearly two-year gap in time is insufficient as a matter of law to permit a finding of causation. The Court disagrees.

As Plaintiff describes it, Plaintiff's complaint of discrimination was followed by a series of humiliating and offensive microaggressions inflicted upon Plaintiff by Chief Holmer. Specifically, Plaintiff has testified that after his outcry of discrimination, Chief Holmer began publicly mocking Plaintiff, Doc. 41-5 at 90-92, excluded him from discussions involving his direct-reports, *id*. at 97-99, and took away his purchasing authority, *id*. at 93-97. Then, Plaintiff modified his police vehicle with additional lighting after having discussed it with the Deputy Chief in charge of the fleet vehicles, but not Chief Holmer. *Id*. at 106. This ultimately led to Chief Holmer requesting an internal investigation of Plaintiff's conduct. Doc. 39 ¶ 38. Subsequent to that investigation, Chief Holmer concluded that Plaintiff was deceitful and untrustworthy. Doc. 27-22. Based upon this, Chief Holmer recommended in November 2022 that Plaintiff be demoted. *Id*. at 4.

Defendant makes much of the 22-month gap in time between Plaintiff's protected activity and the decision to demote him. But the cases cited by Defendant do not stand for the proposition that gaps in time disprove causation. Rather, they stand for the unsurprising proposition that a plaintiff cannot rely on timing to prove causation when there is a large gap in time. *See Horwitz v. Board of Educ.*, 260 F.3d 602, 613 (7th Cir. 2001) (stating that "it is difficult to infer causation based solely upon the timing of [plaintiff's] termination and the filing of this lawsuit" when there is a six-month gap); *Wallscetti v. Fox*, 258 F.3d 662, 669 (7th Cir. 2001) (holding that a four month period of time "without more, is too long to support a reasonable inference of causation"). But in this case Plaintiff is not using the close timing of events to demonstrate causation. Rather, as is described above, Plaintiff points to the repeated and increasingly hostile treatment by Chief

7

Holmer beginning after Plaintiff's report of discrimination to demonstrate a causal link between Plaintiff's protected activity and his demotion.

Defendant also argues that Plaintiff was clearly not demoted due to Plaintiff's complaint of discrimination because he was instead demoted following an internal investigation that involved lawyers, a formal report, and the Village Manager (who was unaware of Plaintiff's complaint of discrimination) as the final decisionmaker. While an independent investigation and recommendation can demonstrate a non-pretextual basis for employee discipline, there is evidence from which a reasonable jury could conclude that is not what happened here. The report to the Village Manager was written by Chief Holmer. Doc. 27-22. In it, Chief Holmer describes conducting an "interrogation" of Plaintiff as part of the internal investigation. *Id.* at 2. The conclusions in the report are clearly those of Chief Holmer rather than any independent third party and are subjective characterizations about Plaintiff's trustworthiness. While a reasonable jury could conclude that Chief Holmer had every right to reach the conclusions that he did, a reasonable jury could also find that Chief Holmer's feelings about Plaintiff changed significantly after Plaintiff accused Chief Holmer of age discrimination, and that this colored all of their subsequent interactions in a way that was material to Chief Holmer's ultimate recommendation that Plaintiff be demoted. Moreover, it cannot seriously be argued that any Village Manager reading Chief Holmer's report would have made any other decision but to demote Plaintiff, given the strong terms in which it was written. *See, e.g., id*. at 3 (stating that Plaintiff's conduct "undermines the authority of Chief of Police" and "fosters a culture of dishonesty, instead of one of accountability and integrity."). In short, there is enough evidence in the record that the "internal investigation" may have been pretextual for Count II to be submitted to a jury.

**III.    Constructive Discharge (Count III)**

Finally, the Court considers Plaintiff's constructive discharge claim under Title VII. Plaintiff's position is that the "conditions created by Defendant, including demoting him and subjecting him to embarrassment and ridicule, were so extreme, [he] was forced to resign on January 31, 2024." Doc. 15 ¶ 54. Constructive discharge, like actual discharge, is a materially adverse employment action. *See Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010). Constructive discharge occurs when "the plaintiff shows that he was forced to resign because his working conditions, from the standpoint of the reasonable employee, had become unbearable." *Id*. Courts recognize two forms of constructive discharge: (1) "when an employee resigns due to discriminatory harassment," and (2) "when an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated." *Beverly v. Abbott Lab'ys*, 107 F.4th 737, 745 (7th Cir. 2024). The first "requires a discriminatory work environment even more egregious than the high standard for hostile work environment." *Id.* The second "requires the plaintiff to show that []he was forced to resign because [his] working conditions became so intolerable that a reasonable person would have felt compelled to resign." *Id.*

Even viewing Plaintiff's submitted facts as true and drawing all reasonable inferences in Plaintiff's favor, no reasonable jury could find that Plaintiff was constructively discharged. Plaintiff complains about being publicly mocked by Chief Holmer and undermined when Chief Holmer excluded him from discussions involving his supervisees and took away his purchasing authority. He also describes on one occasion being placed in an "arm bar" in front of others, and one other occasion being yelled at. Nothing that Plaintiff describes constitutes harassment "even more egregious than the high standard for hostile work environment." *Beverly*, 107 F.4th at 745. The Seventh Circuit has found an egregious work environment must be extreme: like when one's

9

personal safety is threatened. *See, e.g., Porter v. Erie Foods, Int'l, Inc.*, 576 F.3d 629, 640 (7th Cir.2009) (egregious conduct demonstrated where harassment included repeated threats involving a noose and implied threats of physical violence); *Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1198–99 (7th Cir.1992) (constructive discharge where supervisor brandished a firearm and held it to a plaintiff's head). This is because absent extraordinary circumstances, "an employee is expected to remain employed while seeking redress." *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, 303 (7th Cir. 2004). Being transferred, suffering subpar working conditions, loss of employment benefits, and unfair reprimands do not meet this standard. *See, e.g., Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 366 (7th Cir. 2009) ("It is entirely implausible to suggest that a transfer from editorial writing to copy editing was enough to make [plaintiff's] working conditions 'unbearable.'"); *Harriston v. Chicago Trib. Co.*, 992 F.2d 697, 705 (7th Cir. 1993) (jury could not find constructive discharge where plaintiff was excluded from office activities, reprimanded without reason, given the least lucrative sales territories, not assigned new accounts, not allowed to supervise, and refused assistance from her boss); *Fugate v. Dolgencorp, LLC*, 555 F. App'x 600, 605 (7th Cir. 2014) (manager's unfair criticisms, manufacturing of evidence, and boorish remarks do not amount to constructive discharge). In short: Plaintiff's arguments that "his professional standing was destroyed" by his demotion, and that there was a "tone" in the workplace that Plaintiff was untrustworthy, Doc. 38 at 15, simply do not meet the standard for constructive discharge.

What really seems to have caused Plaintiff's retirement is the fact that his demotion would have negatively impacted his retirement benefits unless Plaintiff retired within a certain amount of time to allow him to retain his Commander pension. *See id.* at 10 (arguing that Plaintiff "faced direct economic pressure to resign sooner rather than later" to keep a higher

10

pension). It is undisputed that to try and mitigate this, Plaintiff asked Chief Holmer to delay his demotion until his retirement at the age of 50, and Chief Holmer agreed. Doc. 39 ¶ 49. Plaintiff was provided with a separation agreement that would have allowed him to remain a Commander until he could retire, but ultimately chose not to sign the agreement. Doc. 39 ¶ 50. Why Plaintiff seems to have opted for the worst outcome – accepting the demotion and the accompanying professional embarrassment and then retiring anyway – is unclear. However, the fact remains that if Plaintiff wanted both his higher pension and to keep working, he could have stayed in his Sergeant position as he litigated this case and then recovered the full pension benefits to which he believes he was entitled. But the vagaries of the pension system do not constitute discriminatory harassment.

  Nor has Plaintiff pointed to facts to show that a reasonable employee would feel as though his termination was imminent, or that the metaphorical "axe was about to fall." *Fischer v. Avanade, Inc.*, 519 F.3d 393, 409-10 (7th Cir. 2008); *see e.g., E.E.O.C. v. Univ. of Chicago Hosps.*, 276 F.3d 326, 332 (7th Cir. 2002) (finding constructive discharge where plaintiff arrived to work to find her belongings packed and her office used for storage); *Hunt v. City of Markham, Ill.*, 219 F.3d 649, 655 (7th Cir. 2000) ("A person who is told repeatedly that he is not wanted, has no future, and can't count on ever getting another raise would not be acting unreasonably if he decided that to remain with this employer would necessarily be inconsistent with even a minimal sense of self-respect, and therefore intolerable."). Here, Plaintiff asserts that he felt he had no future with the department because there was no clear path for him to rebuild trust with Chief Holmer. Doc. 40 ¶ 12. This was undoubtedly difficult, but it does not constitute constructive discharge. Because of his medical leave, Plaintiff came to work only ten times in the eleven months between his demotion and his resignation. Doc. 39 ¶¶ 52, 55. While on medical

leave, Plaintiff was offered opportunities to return to light duty which he did not accept. *Id.* ¶ 52; *see Chapin*, 621 F.3d 673 at 680 ("[Defendant] made efforts to have [plaintiff] return to work, explained that [plaintiff's] employment was not terminated, and expressed a desire to keep [plaintiff] on as an employee."). And Plaintiff describes nothing about the ten shifts that he did work that would indicate Defendant made it clear that Plaintiff's termination was imminent. In short: Plaintiff points to no evidence of Defendant's conduct during this time that would constitute a constructive discharge. Therefore, Defendant is entitled to summary judgment as to Count III.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted as to Counts I and III and denied as to Count II.

Dated: November 7, 2025

_____
APRIL M. PERRY
United States District Judge